STATE *vs.* JOSEPH J. NETTIS *et al.*

AUGUST 6, 1951.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

490

BAKER, J. This is an indictment charging that three named defendants on October 17, 1947 with force and arms at Providence did rob one Abraham Epstein. Two of the defendants Joseph J. Nettis and Armando Mosco were tried together in the superior court before a jury which found them guilty. The trial justice denied their motions for a new trial and they have duly prosecuted to this court their bill of exceptions containing twenty-six exceptions. Those exceptions which are not briefed or argued are deemed to be waived. It appears that the third defendant is confined to the state hospital for mental diseases.

The evidence shows that Abraham Epstein, who was about seventy years of age, was a sexton of a synagogue at the time of the alleged robbery and he resided in Providence. While attending college in that city his grandson Stephen Cohen, about nineteen years of age, was living

with his grandfather. About eight o'clock on the morning of October 17, 1947 Epstein returned to his home from the synagogue. He entered the house by the back door and found that his grandson was dressed and about to leave for his studies. However, as they delayed to prepare some food there was a knock at the back door. The grandson opened the door and three men pushed into the kitchen, one being tall, one of medium height, and the other short. The man last referred to threatened Epstein and his grandson with a revolver.

Without attempting to rehearse the evidence in detail it shows in substance that the men immediately pulled down the window shades in the kitchen; that the wire to the telephone which was in that room was cut; that two of the men tied up Epstein and his grandson while the man with the revolver covered them; that their hands and feet were fastened with adhesive tape, pieces of curtain, neckties and whatever material of that kind was available; that a gag was put in Epstein's mouth but was later loosened; that a cloth of some sort was pulled over the grandson's head and fastened around his neck; and that Epstein and Cohen were then placed in the bedrooms of the apartment. One of the men removed several dollars and a bunch of keys from Epstein's pocket. The latter was asked where the money was and after some delay told the men it was "In the top drawer" referring to a bureau which was in the kitchen. Two of the men searched the rooms and removed about $200 from the bureau while the third man with the revolver guarded Epstein and Cohen. The men then left the apartment having spent between ten and fifteen minutes there.

In a short time thereafter Cohen succeeded in getting his head free of the cloth covering. With some difficulty he went from the bedroom to the pantry where he found a knife which he gave to his grandfather who cut the bindings on Cohen's hands and feet. The latter thereupon freed

his grandfather. Cohen called the police from a telephone in an upstairs apartment. They answered the call in a short time and after making an examination took Epstein to a hospital for treatment of a cut on his head caused by a blow from the handle of the revolver. Cohen was not injured but had been struck in the face and pushed around when the men entered the kitchen.

At the trial defendant Nettis did not testify, but defendant Mosco and several members of the latter's family attempted to prove that he was at his home in bed at the time the alleged robbery took place. Both defendants also contended that the evidence of the state's witnesses on the issue of defendants' identification was unsatisfactory and not credible. The defendants press a group of four exceptions which raise the same question and may be treated together. They relate to the exclusion of certain testimony followed by offers of proof tending to show that defendant Mosco, who had previously been convicted and sentenced several times and finally had been paroled in September 1941, was thereafter harassed, threatened and picked up by the police notwithstanding his alleged good habits in an attempt to rehabilitate himself.

We have examined these exceptions and in our opinion they are without merit. They do not properly raise any question respecting Mosco's character and they deal with matters that are not material to the issue which was before the jury in the instant case, namely, whether he participated in the alleged robbery. Further the case of *State* v. *Papa,* 32 R. I. 453, is not applicable here. There is nothing in that opinion to support Mosco's contention that he could properly show by the excluded testimony a course of conduct indicating an intent not to become involved further with the law. Also the evidence in question, being general and on immaterial issues, was not admissible as evidence of habit and custom. The exceptions under consideration are overruled.

In addition both defendants rely on a group of fifteen exceptions which involve the same general point. They deal with the exclusion of testimony and offers of proof concerning the action of certain police officers toward defendants and relating to proceedings in the district court when they were before that court on October 23, 1947. Broadly speaking defendants wish to show by the excluded evidence that they were held by the police without being charged with any offense for a time longer than the law allows; that during said period they were assaulted by the police; that they were without legal representation at the hearing in the district court; and that in such court they were arraigned on ten other charges which had also been made against others. They contend in substance that such evidence was admissible to show a plan by the police to persecute them.

We have carefully considered the above exceptions and find that they are not good. The issue for the jury in the present case was simple and narrow. If the police had unlawfully detained or improperly treated the defendants they had the right to institute civil proceedings to recover damages. No confession by them was involved in this proceeding, none was offered by the prosecution, and the police did not testify. Further the hearing in the district court was merely on probable cause to ascertain whether defendants should be bound over for action by the grand jury. Whether they were then represented by counsel is immaterial, but when the indictment found by the grand jury was tried in the superior court before a petit jury the defendants were fully represented by able counsel. The procedure taken in the district court and the preferring of other charges which were not before the jury in the instant proceeding are irrelevant and immaterial matters here. The above exceptions are overruled.

The defendants took three exceptions to portions of the charge of the trial justice to the jury. The first of these

exceptions relates to that part of the charge wherein was mentioned the manner in which earlier proceedings against the defendants had allegedly been conducted. The questioned part of the charge was as follows: "Now, actually, Mr. Foreman and members of the jury, this case is a pretty simple one, and it comes down to one very simple question, it seems to me, and any talk about other indictments against these two defendants, or high bail, or what happened in the district court, is of no concern of yours. This case is here to be tried in this court before us, and what happened in any other place is no consequence with this possible exception; some talk has been had about the failure of Epstein and his grandson to identify these defendants in the district court, that they looked around and couldn't see them, and it was only after the judge said, 'Look down at the table,' that they identified them. That is an item you can take into your consideration in determining whether or not the complaining witnesses knew that these were the men who came into their house and robbed the place. And the state, of course, has the obligation of proving that to you beyond a reasonable doubt." It is our judgment that the charge as given was proper; that it fully protected the defendants' rights; and that they take nothing by this exception.

The defendants' next exception is to the following portion of the charge: "and in considering the matter in the district court in regard to picking out the defendants, you can, of course, take into consideration the testimony, as I recall it, and your recollection is controlling Mr. Foreman and members of the jury, that Epstein and Cohen had already been down to the police station and identified the men before that." The difficulty here is that according to the evidence Epstein did not go to the police station and identify the defendants although Cohen did. However, it is our opinion that the trial justice's positive instruction to the jury that their recollection is controlling corrects the error

appearing in his own remembrance of the evidence. In the circumstances the language of the trial justice did not go to the extent of amounting to a material misstatement of the testimony. *Reynolds* v. *Davis*, 55 R. I. 206. When this part of the charge is considered as a whole we are of the opinion that the defendants were not prejudiced and that the exception is without merit.

Finally defendants excepted to that portion of the charge which reads as follows: "However, the one question in this case that is the important one, and which you must decide, is whether or not Epstein and Cohen knew that these were the men who committed robbery in their house. There isn't any question, it is admitted by both defendants and the state that a robbery took place. Somebody went in and robbed this house and hit Epstein over the head. The only question is who did it." The defendants argue in substance that they did not admit that a robbery had taken place, their position being that they knew nothing about the matter, and also that the charge in effect erroneously directs the jury to find that a robbery had taken place.

We are of the opinion that the construction placed by the defendants upon the above-quoted language is unreasonable, especially when the charge is considered as a whole. While the use of the word "admitted" in the challenged portion of the charge was probably not strictly accurate, it is clear the defendants had not denied that a robbery had taken place. In our opinion the word "admitted" was used with the latter connotation, did not mislead the jury, and was not prejudicial. Undoubtedly the trial justice had in mind the positive testimony of Epstein and Cohen as to the occurrence in the house and the fact that such evidence had not been questioned by the defendants and was neither inherently improbable nor self-contradictory. In the circumstances it was obvious that the chief question in the case was that of identification.

496

We find that the exception in question is without merit and that all the exceptions to the charge should be overruled.

The defendants' remaining exception is to the denial by the trial justice of their motions for a new trial. In the present case the issue of credibility was paramount and in determining that issue the impression which the witnesses made on the trial justice and on the jury while testifying was of great importance. In denying the defendants' motion the trial justice stated: "The Court was firmly impressed with the integrity and veracity of the complaining witnesses. The Court was not impressed by the defendants' witnesses. It is the independent judgment of this Court that the evidence fully justified the jury in finding the defendants guilty, and the Court fully approves of said verdict." In the circumstances such a decision is entitled to great weight and will not be disturbed by us unless clearly wrong. *State* v. *Prescott*, 70 R. I. 403. Upon examination of the transcript we are not able to so find and the exception under consideration is overruled.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court.

*William E. Powers*, Atty. Gen., *Archie Smith*, Ass't Atty. Gen., for state.

*Aram A. Arabian, John J. McGrane*, for defendant.